UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

HELEN and ROLAND BOUGERE                     CIVIL ACTION

VERSUS                                        NO. 07-3015

STATE FARM FIRE & CASUALTY CO., ET AL.       SECTION "N" (1)

**ORDER AND REASONS**

Presently before the Court are several motions from defendants in this case:

(1) a Motion for Summary Judgment on Plaintiffs' claims under their Standard Flood Insurance Policy (SFIP) (Rec. Doc. 25) by State Farm Fire & Casualty Company ("State Farm");

(2) a Motion for Summary Judgment by State Farm and Tramuta Insurance Agency, Inc. ("Tramuta") as to Plaintiffs' homeowner insurance claims for breach of contract, bad faith, and emotional distress (Rec. Doc. 27);

(3) a Motion for Summary Judgment by State Farm and Tramuta as to Plaintiffs' agent liability claims (Rec. Doc. 28); and

(4) a Motion for Summary Judgment by Defendant True Title, Inc. ("True Title") (Rec. Doc. 29).

After reviewing the pleadings, the memoranda of the parties, and the applicable law, **IT IS ORDERED** that the above-listed motions are hereby **GRANTED.**

## I. BACKGROUND

The Bougeres purchased their home at 3821 Woodbriar Drive in Harvey, Louisiana in 2001, and refinanced the property in 2002. They moved to refinance again in July 2005, selecting Centex Home Equity Company, LLC ("Centex") as their lender. Centex retained True Title to perform title and closing services. The loan closed on August 23, 2005, and the funding was scheduled to occur on August 29, 2005, the day Hurricane Katrina made landfall.

At the time that Hurricane Katrina struck, the Bougeres were insured under an SFIP issued through State Farm. After the storm, Plaintiffs contacted State Farm and submitted a claim for flood damage under their SFIP. *See* State Farm Mot., Ex A. However, it is undisputed that they did not file a sworn "Proof of Loss" statement until September 2008. *Id.* State Farm inspected the property in September 2005 and concluded that it had suffered no flood damage. *Id.*

It is also undisputed that the Bougeres did not, at the time of Katrina, have homeowner's insurance to cover non-flood losses, because their policy had lapsed. State Farm sent the Bougeres a Notice of Cancellation on July 19, 2005, warning that the policy would automatically lapse on August 8, 2005 if not paid in full. *See* State Farm Mot., Ex. D. Additionally, State Farm mailed Centex, as the mortgagee of the property, a similar notice on July 20, 2005. *Id.* Agents at Tramuta left a phone message for the Bougeres on July 19, 2005, reminding them of the missed payment. *See* Tramuta Mot., Ex. E (affidavit of Phyllis Collongues). And on August 10, 2005, a Tramuta agent faxed Centex to note that the policy had lapsed and that it would not be reinstated until payment was received. This document was forwarded to True Title and was shown to the Bougeres at closing, and they initialed it. *See* True Title Opp. at 3, Ex. 3. Indeed, prominently underlined on the fax cover sheet is the handwritten notation, "exp August 8, 2005." *Id.* Nonetheless, no payment was received

until October 10, 2005. On November 15, 2005, State Farm denied the Bougeres' claim on the grounds that the policy had lapsed the preceding August 8th.

The Bougeres filed the instant suit on April 20, 2007 in Louisiana state court, stating claims for breach of contract, bad faith claims handling, and intentional infliction of emotional distress against State Farm and Tramuta, as well as a negligence claim against Tramuta for failure to procure property insurance on the behalf. They additionally state a claim for negligence against True Title. The case was removed on May 25, 2007.

## II. ANALYSIS

### A. Summary Judgment Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the moving party carries its burden pursuant

to Rule 56(c), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex*, 477 U.S. at 324, 106 S.Ct. 2553; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Auguster v. Vermillion Parish School Bd.*, 249 F.3d 400, 402 (5th Cir. 2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.*, 277 F.3d 757, 764 (2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *See id.* (emphasis in original) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir.2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."). Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence ." *Little*, 37 F.3d at 1075. Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

**B. Claims under SFIP**

It is undisputed that the Bougeres submitted a claim for benefits under their SFIP to State Farm relative to alleged flood damages from Hurricane Katrina. Following inspection of the property by Defendant's adjustor in September 2005, the claim was denied. Plaintiff eventually filed suit on April 20, 2007. Despite the foregoing interaction, it likewise is undisputed that the Bougeres did not submit to State Farm a sworn proof of loss, as required by 44 C.F.R. §61, app. (A)(2), art. VII (J)(4), before filing this suit. *See also* C.F.R. §61 app. (A)(1) art. VII (R) (requiring *prior* compliance with all policy requirements before filing suit in court). This requirement is a "strict" one; substantial compliance is not sufficient. *Marseilles Homeowners Condo. Ass'n., Inc. v. Fidelity Nat'l Ins. Co.*, 542 F.3d 1053, 1055-56 (5th Cir. 2008) (quoting *Richardson v. American Bankers Ins. Co.,* No. 07-30271, 279 Fed. Appx. 295, 2008 WL 510518, at 299 (5th Cir)). Rather, the sworn proof of loss requirement "must be 'strictly construed and enforced.'" *Richardson*, 542 F.3d at 1056 (quoting *Gowland v. Aetna*, 143 F.3d 951, 954 (5th Cir. 1998)).

The Bougeres argue that State Farm is estopped from asserting a proof of loss defense, since it originally denied their claim on grounds that the flood policy had lapsed, which prevented them from timely filing their proof of loss. This argument fails on the evidence presented. The company

5

corrected this mistake in February 2006, *see* Tramuta Mot., Ex. C, which still left the Bougeres more than six months to timely file their proof of loss, given the relaxation of the standard 60-day filing deadline by the administrator of FEMA. *Id.* at 1057. More importantly, principles of constructive waiver or equitable estoppel do not excuse the proof of loss obligation. *Id.* at 1056 (citing *Richardson,* No. 07-30271, 279 Fed. Appx. at 299). To the contrary, the proof of loss requirement is waived only with "the *express* written consent of the Federal Insurance Administrator." *Id.* (citing 44 C.F.R. §61, app. A(2), art. VII (D) (emphasis added). In this instance, no such express written consent exists. Because Plaintiff never satisfied this requirement prior to filing this action, the claim must be dismissed with prejudice.[1]

**C. Homeowner's Insurance Claims**

The Bougeres also state a breach of contract claim for State Farm's failure to honor their homeowner's policy. State Farm argues that the policy lapsed on August 8, 2005 and that the Bougeres had good notice of that fact. LA. REV. STAT. 22:636, which controls cancellations of homeowner's insurance policies, states that:

> No notice of cancellation of a policy ... shall be effective unless mailed by certified mail or delivered by the insurer to the named insured at least thirty days prior to the effective date of cancellation; however, when cancellation is for nonpayment of premium at least ten days notice of cancellation accompanied by the reason therefor shall be given. In the event of nonpayment of premiums for a binder, a ten day notice of cancellation shall be required before the cancellation shall be effective. Notice of cancellation for nonpayment of premiums shall not be required to be sent by certified mail.

---

[1] Because this Court finds that the Proof of Loss issue is dispositive of the entire SFIP claim, it does not address Defendant's additional defenses: that the Bougeres failed to comply with the SFIP's documentation requirements and that the Bougeres' state law claims for mental anguish damages and attorneys' fees are preempted by federal law.

LA. REV. STAT. 22:636.1(D). Notice is also required to the mortgage holder. *Id.* at 2(A). Non-payment of premium is defined as "failure of the named insured to discharge when due any of his obligations in connection with the payment of premiums on a policy, or any installment of such premium." *Id.* at (6)(A). In the instant case, it is undisputed that State Farm has complied with the requirements of the statute–indeed, it gave the Bougeres far more than 10 days notice, and also notified the mortgage holder, Centex. In their brief,[2] the Bougeres simply do not address 22:636 or the homeowner's policy claims at all, and accordingly the claim must be dismissed with prejudice.[3]

**D. Claims for Agency Liability**

The Bougeres state a claim against Tramuta (and under principles of vicarious liability, against State Farm) for failing to advise them of the inadequacy of their property coverage and for failing to obtain adequate coverage. *See* Compl. at ¶¶ 18-20. To state a claim for failure to obtain coverage against an agent, a plaintiff must prove (1) an undertaking or agreement by the insurance agent to procure insurance, (2) failure of the agent to use reasonable diligence in attempting to place the insurance and failure to notify the client promptly if he has failed to obtain the insurance, and (3) action by the agent warranting the client's assumption that the client was properly insured. *Offshore Prod. Contrs., Inc. v. Republic Underwriters Ins. Co.*, 910 F.2d 224, 229-30 (5th Cir. 1990)

---

[2] Plaintiffs purported to file one brief addressing State Farm's motions as to the flood and homeowner's policies, but the brief only addresses the flood policy. *See* Dkt. Entry 44 (noting "RESPONSE/MEMORANDUM in Opposition filed by all plaintiffs re 25 MOTION for Summary Judgment, 27 MOTION for Summary Judgment filed by State Farm").

[3] The Bougeres' claims for statutory penalties and fees for bad faith claims handling, as well as mental anguish damages, also fail since those remedies are unavailable in cases where there is no underlying cause of action for failure to pay a legitimate claim. *See Clausen v. Fidelity and Deposit Co.*, 660 So.2d 83 (La. App. 1995), *writ denied*, 666 So.2d 320 (La. 1986).

(citations omitted); *Taylor v. Sider*, 765 So.2d 416, 418 (La. App. 2000) (citing *Opera Boats, Inc. v. Continental Underwriters, Ltd.*, 618 So.2d 1084, 1085-86 (La. App. 1993)). Agents have a duty to use reasonable diligence in attempting to place the insurance requested. *See Karam v. St. Paul Fire & Marine Ins. Co.*, 281 So.2d 728, 730 (La. 1973). But there is no duty "to spontaneously identify a client's needs and advise him as to whether he is underinsured or carries the right type of coverage." *Dobson v. Allstate Ins. Co.*, 2006 WL 2078423, at * 10 (E.D. La. 2006) (Vance, J.). In this case, as noted above, the Bougeres were repeatedly informed that their coverage had lapsed as of August 8, 2005. They have presented no evidence that there was any agreement that Tramuta would obtain new coverage at any time before Katrina made landfall. Accordingly, their claims against Tramuta must be dismissed with prejudice.

**E. Negligence Claim Against True Title**

Finally, the Bougeres bring a negligence claim against True Title, alleging that the company failed to timely disburse the proceeds of their home refinance, ensure continuation of their property coverage, and generally act in the Bougeres' interest. *See* Compl. at ¶¶ 21-24. The gravamen of their complaint is that they planned to use the proceeds from their refinance to bring their homeowner's insurance policy up to date, and that True Title's delay in disbursing the proceeds left them uninsured when Hurricane Katrina made landfall. This argument falls short on several fronts. True Title received the funds via wire transfer on August 29, the day Hurricane Katrina made landfall and one day after a mandatory evacuation of New Orleans. It is unclear how the Bougeres can credibly allege that True Title's failure to disburse the funds on that particular day constitutes negligence. Additionally, even if True Title–alone among the businesses of New Orleans–had been in operation

on that day, there is no evidence that cutting a check to State Farm on the Bougeres' behalf would have made any difference under the facts of this case since State Farm, having lawfully cancelled the policy for non-payment pursuant to LA. REV. STAT. 22:636, was under no obligation to renew it.

Additionally, the Bougeres seem to suggest that since True Title knew that Hurricane Katrina was approaching the city and knew that the Bougeres did not have homeowner's insurance, the company owed the Bougeres a duty to ensure that they were covered against the impending risk of damage. *See* Opp. at 3 ("Plaintiffs were under the understanding that these funds were to be paid through Escrow. [*sic*] And contend that through the escrow commitment procedure, True Title forbears to the greatest extent to take action against the possibility of anyone taking an adverse action against these homeowners affected by Hurricane Katrina."). No authority for this proposition is cited and the Court can find none in Louisiana law. Indeed, the Court is reluctant to recognize any such duty in a case in which it is undisputed that the plaintiffs themselves were fully aware that their homeowner's policy had lapsed.[4] Because the Court finds that the Bougeres cannot establish either that True Title breached a duty to them, nor that True Title's actions were a cause-in-fact of their loss, the claim against True Title must be dismissed with prejudice.

### III. CONCLUSION

Unfortunately, though it is sympathetic, this Court cannot rewrite the law to cover the

---

[4] Indeed, since it is undisputed that in the days prior to Katrina making landfall the refinance proceeds had not been received by True Title, what the Bougeres are essentially alleging is that True Title had a duty to use its *own* funds to purchase insurance for its clients–an extraordinary allegation for a property owner to make.

Bougeres' losses. The motions for summary judgment referenced above are hereby **GRANTED** and Plaintiffs' claims against all Defendants are **DISMISSED WITH PREJUDICE**. As this order disposes of all of Plaintiffs' claims in this matter, the clerk is **ORDERED** to **CLOSE** the case.

New Orleans, Louisiana, this 7th day of November 2008.

_____
KURT D. ENGELHARDT
UNITED STATES DISTRICT JUDGE